**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

|                          |     |                          |
|--------------------------|-----|--------------------------|
| LARRY D. JAMES,          | )   | Case No. CV 04-429-S-EJL |
|                          | )   |                          |
| Plaintiff,               | )   | MEMORANDUM ORDER         |
|                          | )   |                          |
| v.                       | )   |                          |
|                          | )   |                          |
| ADAMS COUNTY, IDAHO, *et al.*, | )   |                          |
|                          | )   |                          |
| Defendants.              | )   |                          |

Pending before the Court in the above-entitled matter are Defendants' motions to dismiss or, alternatively motion for summary judgment and related motion to strike affidavit of Plaintiff.  The matters are fully briefed and ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument.  Local Rule 7.1(d)(2).

**Factual and Procedural Background**

Plaintiff Larry James filed the complaint in this action alleging civil rights violations resulting from conduct by the Defendants during the arrest and detention of Mr. James.  The arrest occurred on August 24, 2002 when Mr. James entered a barn on the property upon which his estranged wife, Dale James[1], was residing in order to retrieve a

---

[1] Dale James is now Dale Zanders, however, because she is named as Dale Z. James in the complaint and at the time of these events she was still Dale James this order shall refer to her as Ms. James.

backhoe.  Ms. James and her mother, Judy Zanders, were home when Mr. James entered the property.  Defendants James and Zanders contacted the local police asserting that Mr. James was in violation of a Protective Order issued on August 2, 2002.  Deputies Jeff Brown and Patricia Wolfe, who are also named Defendants, arrived at the scene and, after some discussion regarding the Protective Order, arrested Mr. James.  Before arresting Mr. James the Deputies communicated with dispatch regarding the language of the protective order.  Deputy Brown first asked dispatch to read him the language of the Protective Order and then asked dispatch to contact the Honorable James C. Peart, Magistrate Judge for Adams County, who had issued the Protective Order.  Judge Peart has also been named as a Defendant in this action.  The amended complaint also names the following as Defendants: County of Adams, Jeff Brown, Patricia Wolfe, all Adams County dispatchers and jailers, Sheriff Richard Green, James C. Peart, and Myron D. Gabbert Jr..  (Dkt. No. 42).

The amended complaint raises civil rights claims pursuant to § 1983 for unreasonable seizure; unreasonable use of force, battery, and abuse of process; false arrest, false imprisonment, denial of bail; and denial or restricted right to counsel.  (Dkt. No. 42). The amended complaint also raises two claims pursuant to § 1985 for conspiracy to deny or deprive plaintiff equal protection, equal privileges, and/or equal immunities under the laws; and conspiracy to deny plaintiff equal privileges and/or equal immunities under the law by attempting to thwart the required appointment of a special prosecuting attorney.  (Dkt. No. 42).  In addition the complaint asserts state law causes of action pursuant to Idaho Code §§ 18-901 *et seq*., 39-6312(2), and other state rules.

The Court previously granted motions to dismiss as to both Judy Zanders (Dkt. No. 18) and Dale James (Dkt. No. 35). The remaining Defendants have now filed two motions

for dismissal and/or summary judgment.  The first motion relates to Judge Peart and the second motion relates to Defendants Adams County, Richard Green, Jeff Brown, Patricia Wolfe, and Myron D. Gabbert, Jr..  The Court will address each motion in turn.

**Standards of Law**

1)      <u>Motion to Dismiss</u>:

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  <u>Wyler Summit P'ship v. Turner Broad. Sys., Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint.  <u>See Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a strong presumption against dismissing an action for failure to state a claim.  <u>See Gilligan v. Jamco Dev. Corp.</u>, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'"  <u>Id.</u> (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), *overruled on other grounds by* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982)).  Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46,  (1957); <u>see also</u> <u>Hicks v. Small</u>, 69 F.3d 967, 969 (9th Cir. 1995).  A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief.  <u>See United States v. Howell</u>, 318 F.2d 162, 166 (9th Cir. 1963).

2)   <u>Motion for Summary Judgment</u>:

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. <u>Summers v. A. Teichert & Son, Inc.</u>, 127 F.3d 1150, 1152 (9th Cir. 1997). Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it

---

[2]  <u>See also</u>, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).  Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## Discussion

1)      Motion to Dismiss/Motion for Summary Judgment as to Defendant James C. Peart:

Mr. James' claims against Judge Peart relate primarily to Judge Peart's involvement in a telephone conversation with dispatch relating to the language of the Protection Order. Mr. James alleges that during that conversation Judge Peart improperly directed, instructed, and/or encouraged the officers to arrest him without any basis in fact or law thereby violating Mr. James' civil rights.  Judge Peart's motion asserts because he was acting in his

judicial capacity when engaging in the acts complained of, he is entitled to judicial immunity as to all claims whether brought against him in his official or individual capacity. The motion asserts each of the claims raised against Judge Peart should be dismissed including § 1983, § 1985, and any state law claims. In response, Mr. James notes he has not raised the state law claims as to Judge Peart. Therefore the only claims in question as to this Defendant are the federal claims made pursuant to § 1983 and § 1985.

      a)     <u>Section 1983 Claims</u>:

The motion to dismiss asserts Judge Peart is entitled to judicial immunity as to the § 1983 claim. Mr. James opposes the motion arguing Mr. Pert was acting outside of his official capacity when he directed the officers to arrest him because his conclusion was made without any factual basis or probable cause, from his home, and without any documentation or means of preserving a record as would normally be present in a judicial proceeding. Additionally, Mr. James contends that Judge Peart's decision was not judicial in nature but, instead, was an administrative or executive decision outside of his official capacity; stating that only the prosecutorial or law enforcement agencies can make the decision to arrest an individual. Further, Mr. James asserts that the parties did not expect to be dealing with the Judge in his official capacity given the circumstances. Whether judicial immunity applies in this case turns on whether Judge Peart was acting within his official capacity.

Here, dispatch contacted Judge Peart at his home at 10:43 p.m. on Saturday, August 24, 2002 at the request of the Deputies on the scene to inquire about the language of the Protective Order. Judge Peart's affidavit indicates that dispatch read the Protective Order to him and informed him that Mr. James had been at the residence since the afternoon

attempting to start a backhoe which he needed in order to fix an irrigation ditch.  (Dkt. No. 47, Att. 3, p. 2).  To which Judge Peart avers he stated "I believe I informed the dispatcher that the fact situation as described did not appear to be an emergency contemplated by the Protection Order and, therefore, sounded like a violation of the order.  I did not direct or suggest that anyone be arrested."  (Dkt. No. 47, Att. 3).

It is a longstanding rule that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978); see also Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922-23 (9th Cir. 2004) (citations omitted).  Judicial immunity is overcome in two sets of circumstances: 1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity and 2) a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction."  Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (citations and quotations omitted).  Thus, a judge "is immune from § 1983 liability as long as his 'ultimate acts' were 'judicial actions taken within the court's subject matter jurisdiction.'" Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc).

As to the first circumstance, "whether an act by a judge is a judicial one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  Stump, 435 U.S. at 362 (citation and quotations omitted).  Thus, the relevant inquiry is as to the nature and function of the act, not the act itself.  Mireles, 502 U.S. at 13. There are four factors relevant to the determination of whether a particular act is judicial in nature:

> (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.

Meek v. County of Riverside, 183 F.3d 962, 967 (9th Cir. 1999) (citation omitted).  Though the Judge's actions here occurred from his home the act performed by the judge, interpreting an order he previously entered, is wholly judicial in nature and function.  The lack of formality does not transform the acts into nonjudicial ones thereby precluding immunity.  See Stump, 435 U.S. at 362.  Mr. James' argument that his involvement was not in the normal function of a judge or as expected by the parties is without merit; the only reason Judge Peart was called was in his official capacity as the presiding judge in this matter and author of the Protection Order in question.

Mr. James contends that Judge Peart wrongly ordered or directed the officers to arrest him, which Judge Peart denies and of which he argues that Mr. James has failed to offer any evidence.  Regardless, if Judge Peart had directed the officers to arrest Mr. James for violation of the court order, whether wrongly or right, that act still qualifies as one judicial in nature and entitled to immunity.  Judges clearly have the authority to issue arrest warrants, bench warrants, and hold individuals in contempt of court orders.  See Meek, 183 F.3d at 967 n. 2 (providing citations of cases as examples of actions which qualify and fail as judicial in nature).  The allegation here, at a minimum, is akin to a judge holding an individual in contempt of a court order.  Mr. James' arguments appear to challenge the correctness of that decision but that is not the question upon which the immunity inquiry turns.

The Court must now turn to the second inquiry of whether or not the action, even if it was judicial in nature, was taken in "complete absence of all jurisdiction."  Mireles, 502 U.S. at 12.  Judge Peart acted within his jurisdiction.  "[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. The scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."  Stump, 435 U.S. at 356 (citation omitted).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction."  Id.  The Protection Order was entered on August 2, 2002 by Judge Peart in the domestic relations case pending before him and over which he had jurisdiction.  (Dkt. No. 47, Att. 4, Ex. A); see also Idaho Rule of Civil Procedure 82.  Mr. James was ultimately charged with a misdemeanor for violation of the Protection Order which carries a maximum penalty of $5,000 and one year in custody.  See Idaho Code § 39-6312(1).  Idaho Criminal Rule 2.2 governs the jurisdiction of magistrate judges in criminal matters and provides that magistrates have jurisdiction over any misdemeanor and sentencing upon conviction, whether or not incarceration is involved.  I.C.R. 2.2(b)(1).  Because Judge Peart's actions were taken over a matter well within his jurisdiction he is entitled to judicial immunity against the § 1983 claim raised in this matter.  Therefore, the motion to dismiss as to this claim is granted.

      b)      Section 1985 Claims:

The fifth cause of action in the amended complaint is made pursuant to 42 U.S.C. § 1985(3) and alleges, as related to Judge Peart, that the judicial officers "together and in

concert with others...did conspire to cause Plaintiff to be detained and arrested, transported, and incarcerated, all done without the presence of any probable cause, and done so as to violate Plaintiff's constitutional rights...." (Dkt. No. 42, p. 28). The motion argues because the complaint fails to allege any racial or class-based conspiracy there exists no basis for the § 1985(3) claim.

> Section 1985(3) states, in relevant part,
>
> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so ... deprived may have an action for the recovery of damages occasioned by such ... deprivation, against any one or more of the conspirators.

"The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury." Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1140 (9th Cir. 2000) (citing Scott v. Ross, 140 F.3d 1275, 1284 (9th Cir. 1998); see also Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (stating that there are four elements for a § 1985(3) claims:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States).

Title "42 U.S.C. § 1985(3)- the Ku Klux Klan Act of 1871- was enacted by the Reconstruction Congress to protect individuals - primarily blacks - from conspiracies to deprive them of their legally protected rights." Sever, 978 F.2d at 1536. The United States Supreme Court has held that in a § 1985(3) action, a claimant must show "some racial, or

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Accordingly, the Ninth Circuit has held that "§ 1985(3) extends 'beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights.'" Orin v. Barclay, 272 F.3d 1207, 1217 n. 4 (9th Cir. 2001) (quoting Sever, 978 F.2d at 1536)).

Taking the allegations in the complaint as true and construed in a light most favorable to the non-moving party, Mr. James can prove no set of facts in support of his claim which would entitle him to relief.  The complaint does not allege the requisite discrimination upon which a § 1985(3) claim could be based; nor does the record indicate that Judge Peart was motivated by "invidiously discriminatory animus."  Therefore the motion to dismiss is granted as to the fifth cause of action against Judge Peart.  Because this is also true as to the other Defendants, their motion is also granted as to the § 1985 claims.

  c)  <u>Attorney Fees</u>:

Judge Peart has also requested an award of costs and attorney fees pursuant to 42 U.S.C. § 1988(b) which provides for such an award to a prevailing defendant upon a finding that the plaintiff's action was "unreasonable, frivolous, merciless, or vexatious," even though not brought in subjective bad faith.  Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir. 1994).  Such an award is discretionary with the Court.  Because the claims against Judge Peart are without a basis in fact or law, Judge Peart argues attorney

fees are appropriate. The Court will take this request under advisement. Counsel for Judge Peart is directed to submit its billing records and amount of attorney fees requested to which Mr. James may file a response of no more than five pages. The Court will then review the request for attorney fees and rule upon this portion of Judge Peart's motion.

2)      <u>Motion for Summary Judgment as to Remaining Defendants</u>:

The remaining Defendants have filed a motion for summary judgment as to all of the claims raised against them in the complaint which include: § 1983 claims for unreasonable seizure, force, battery, and abuse of process, false arrest, false imprisonment, denial of bail, and denial/restricted right to counsel; § 1985 conspiracy to deny/deprive Mr. James of equal protection; and related state law claims. In response, Mr. James focuses upon the § 1983 claims and has not responded to the motion as to the state law claims nor the § 1985 claim.[3]

a)      <u>§ 1983 Claims</u>:

Defendants argue Mr. James' constitutional rights were not violated because the Deputies had probable cause to arrest him and their actions were not deliberately indifferent or, alternatively, they are entitled to qualified immunity. Mr. James contends the Deputies' and state actors' actions violated his constitutional right because they knew or should have known that he was not in violation of the Protection Order and, thus, the arrest and subsequent detention was unwarranted. Further, as a result of the mistake in charging, Mr. James claims he was unconstitutionally denied his right to bail, counsel, and to be free from abuse of process.

---

[3] The motion as to the § 1985 claim for these Defendants has been granted as noted above.

To establish a prima facie case under 42 U.S.C. § 1983, Plaintiffs "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right." Souders v. Lucero, 196 F.3d 1040, 1043 (9th Cir. 1999) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). The threshold inquiry for § 1983 action is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S. 137, 140 (1979). Defendants here characterize Mr. James' claims as arising from 1) his arrest, 2) the mischaracterization of the charges, and 3) his incarceration without bail. Defendants argue that because probable cause existed for the arrest and they did not intentionally mistake the charge nor maliciously deny of bail or the right to counsel, summary judgment is appropriate. Mr. James does not appear to question the characterization of the claims but does oppose the Defendants' arguments regarding the claims. In particular, Mr. James strongly opposes the argument that probable cause existed for his arrest.

The Arrest:

Mr. James maintains probable cause was not present to justify his arrest because the Protective Order clearly provided that he could access and be present on the property day or night to complete his work and that the only restriction was that he was not allowed to be present on the driveway to the residence where Ms. James was located one-half hour after sunset and one-half hour before sunrise. Since he was at the hay barn accessible via a road other than the driveway, Mr. James claims he was not violating the order. In particular, Mr. James points to the hearing held regarding the issuance of the Protection Order and the dispute surrounding what the word "driveway."

Probable cause is evaluated based on the totality of the circumstances known to the officer at the time of the arrest.  Probable cause to arrest exists where "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [suspect] has committed or was committing an offense."  Beck v. Ohio, 379 U.S. 89, 91 (1964).

In this case, the Deputies were dispatched to the residence around 10:00 p.m. after Ms. James had called 911.  Dispatch informed Deputy Brown that Mr. James was at the ranch taking personal property and Ms. James was attempting to stop him from doing so and that both Mr. and Ms. James were outside in the barn.  (Dkt. No. 64).  When the Deputies arrived, Mr. and Ms. James disputed whether or not Mr. James could be on the premises under the terms of the Protection Order.  Deputy Brown avers that Mr. James maintained he was allowed on the ranch at the barn because of an emergency and because he was not on the driveway.  Ms. James claimed he was not allowed to use the driveway or come on the property thirty minutes after sundown.  Because no one had a copy of the Protection Order, Deputy Brown radioed Dispatcher Vianne Visser and "requested that she read the Protection Order" to him so that he could ascertain who was correct.  Ms. Visser advised Deputy Brown that the Protection Order stated that Mr. James "could not drive onto the driveway thirty minutes after sunset" to which the parties disagreed as to what the word "driveway" meant.  Deputy Brown then requested that Ms. Visser telephone Judge Peart as to the meaning of the language.  Visser relayed to Deputy Brown that Judge Peart stated words to the effect that "It sounds like [Mr. James'] presence on the ranch is a violation."  (Dkt. No. 64).  Following his communication with dispatch, Deputy Brown made the decision to arrest Mr. James in part "to preserve the status quo and to separate

[Mr. and Ms. James] in what appeared to me to be a potentially explosive situation." (Dkt. No. 64).  The Protection Order in this case provides:

> [Mr. James] shall not, EVEN IF INVITED BY [MS. JAMES], go within 20 feet of [Ms. James'] residence. [Ms. James] lives at: Price Valley Ranch House at Tamarack, Idaho - may not drive into driveway for 30 minutes after sunset until sunrise.

(Dkt. No. 47, Att. , Ex. A).   The order further provides that Mr. James shall not communicate with Ms. James except for in certain situations including "To respond to any emergency involving the business."  Id.  In viewing the facts in the light most favorable to Mr. James, the Court concludes Deputy Brown's belief that probable cause existed was objectively reasonable based upon the facts known to him at the time of the incident and the totality of the circumstances.

This case is similar to another case previously decided by this Court, Beirer v. City of Lewiston, 354 F.3d 1058 (9th Cir. 2004), where the officers responded to a call on a temporary protection order where the alleged offender attended the same church service as his estranged wife and children.  The Ninth Circuit up held this Court's denial of the officer's motion for summary judgment on the grounds that the officer did not have probable cause to arrest, in part, because the officer had failed to review the language of the temporary protection order.  The critical distinction between Beirer and this matter is that here Deputy Brown did not simply rely on the statements of the parties' at the scene without reviewing the applicable order; instead, Deputy Brown twice contacted dispatch to ascertain the language of the Protection Order and to clarify his understanding with the judge who issued the order thereby giving him reliable information upon which to determine whether a violation had occurred.  After gathering the information Deputy Brown made a reasonable determination that the Protection Order had been violated and

that probable cause existed to arrest Mr. James.   The fact that the parties disputed the meaning of the word "driveway" at the time the order was entered does not change the reasonableness of Deputy Brown's decision.   Deputy Brown was not a party to nor attended the hearing where the language of the Protection Order was discussed but he took appropriate measures to ascertain its meaning and made an objectively reasonable determination of probable cause based upon his investigation.   Because probable cause to arrest existed, there was not violation of Mr. James' constitutional right as to the arrest and the motion for summary judgment is granted.[4]

Mr. James' claim is also alleged against Mr. Green, the Adams County Sheriff, and Adams County arguing the policies, practices, and customs of the county resulted in the violations of his constitutional rights.   These are claims against the municipality.   To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).   Because the Court has determined that probable cause existed and no constitutional right was violated, Mr. James' claims against the county and its agents and officers are also dismissed.   Further, Mr. James has failed to offer a basis for any deliberate indifference on the part of these Defendants nor has he identified any policy of the county violating his constitutional rights.   This is true also as to any claims against

---

[4]   Mr. James's complaint also has claimed that the Deputies used unreasonable and excessive force during the arrest.   Defendants' have opposed this allegation by the affidavit of Deputy Brown to which Mr. James has offered no response.   The Court has reviewed the record and, aside from the claim in the complaint, can find no basis for this allegation.   Because there does not exist a genuine issue of material fact, the motion for summary judgment on this claim is granted.

the jailers, dispatchers, or similarly situated employees.   These individuals are not responsible nor charged with the duty of verifying the existence of probable cause or the charge under which an individual is booked.  As such, any claims against these Defendants are also dismissed.

Mistaken Charges, Denial of Bail and Counsel, and Abuse of Process:

As to the additional arguments regarding the mistaken citation, denial of bail, and denial of right to counsel, Mr. James argues that the mistaken charge and resulting constitutional violations were a result of actions by the state actors and the policies of the county.   Defendants contend there was no deprivation of a constitutional right and, alternatively, that they are entitled to qualified immunity because their actions were objectively reasonable under the circumstances.

Following the arrest, Deputy Brown completed a probable cause affidavit where he mistakenly charged Mr. James with violating a no-contact order, in violation of Idaho Code § 18-920, rather than the Protection Order, Idaho Code § 39-6312.  (Dkt. No. 64).  The critical distinction between the two charges being that the no-contact order violation was not a bailable offense thereby precluding Mr. James from bailing out of jail.  Deputy Brown also drafted a report of the incident where he noted the arrest was for a violation of the terms of the Protection Order but he erred in his citation of Idaho Code § 36-6312; the proper charge was Idaho Code § 39-6312.  A Deputy in the jail investigated the charge and discovered the error whereby Mr. James was allowed to post bond and was released at 11:46 a.m. on Sunday, August 25, 2002.  At the arraignment hearing, on Monday, August 26, 2002, Judge Peart corrected the charge to reflect a violation of the Protection Order Idaho Code § 39-6311.

"The Fourteenth Amendment does not protect against all deprivations of liberty.  It protects only against deprivations of liberty accomplished 'without due process of law.'"  Baker v. McCollan, 443 U.S. 137, 145 (1979).  In this case, Mr. James has not identified any constitutional deprivation occurring as a result of the mistaken charge or the subsequent events.  While unfortunate that Mr. James was incarcerated for approximately twelve hours, there was no constitutional violation.  As the Supreme Court has stated "The Constitution does not guarantee that only the guilty will be arrested...Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person."  Id.  Because the Defendants' conduct here did not violate Mr. James' constitutional rights, the motion is granted.  Even if there were a constitutional violation, Mr. James has failed to point to any policy that amounts to deliberate indifference which was the moving force behind the constitutional violation. See Board of County Comm'rs v. Brown, 520 U.S. 397 (1997); Monell v. Dep't of Social Servs., 436 U.S. 658, 691(1978); Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992).

Mr. Gabbert:

As to the liability of Mr. Gabbert, the Adams County Prosecutor, the motion asserts he is entitled to absolute immunity as he did not participate in the arrest or incarceration of Mr. James; in fact Mr. Gabbert's only involvement in this action was to have a special prosecutor appointed.  Mr. James makes several speculations that Mr. Gabbert influenced the arrest and subsequent prosecution of this matter for alterior motives relating to his representation of Ms. James in the divorce proceedings.

The Ninth Circuit has recently detailed the immunity afforded to prosecutors in the context of § 1983 actions:

MEMORANDUM ORDER – PAGE 18

> A prosecutor is protected by absolute immunity from liability for damages under § 1983 "when performing the traditional functions of an advocate." Kalina v. Fletcher, 522 U.S. 118, 131 (1997). However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it." Kalina, 522 U.S. at 127 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or "investigative functions normally performed by a detective or police officer." Id. at 126; see also Burns v. Reed, 500 U.S. 478, 494-96 (1991).

Genzler v. Longanbach, 410 F.3d 630, 636 (9th Cir. 2005).

The complaint in this case, claims Mr. Gabbert's actions in concert with other officials resulted in the unreasonable seizure of Mr. James and the removal and concealment of his property. (Dkt. No. 42). In his response brief Mr. James alleges that Mr. Gabbert had "great influence over County officials" and that the Deputies' conclusion that Mr. James was in violation of the protection order "was obviously gleaned from their discussion that the Adams County Prosecuting Attorney represented [Ms. James'] interests." (Dkt. No. 71). Further, Mr. James believes and argues that Mr. Gabbert was contacted during the arrest and must have suggested that he be charged with the mistaken no contact order so that he could not bond out of jail; this belief is based on Ms. James' subsequent use of the backhoe, Mr. Gabbert's statements to Mr. James the following Monday at the courthouse, and statements by a local store owner.

Mr. James offers no evidence of his theory regarding Mr. Gabbert's alleged involvement aside from his own subjective opinions and conclusions. Mere allegations, however, will not overcome a motion for summary judgment. "This circuit has held that self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." Rodriguez v.

Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001) (citation omitted).  "If the affidavit stated only conclusions, and not 'such facts as would be admissible in evidence,'  then it would be too conclusory to be cognizable."  Id. (quoting United States v. Shumway, 199 F.3d 1093, 1104 (9th Cir. 1999)).  The statements of the local store owner are hearsay and inadmissible.  Arguably the two other basis for his conclusions could be admissible; that Mr. Gabbert assisted Ms. James in hiding property and his statement to Mr. James at the Court house.  These facts, however, are conclusory and, even if taken as true, do not give rise to a genuine issue of material fact as to the elements of a § 1983 claim.  Regardless of whether the conclusions are admissible or true, the allegations relate to actions by Mr. Gabbert in his capacity as Ms. James' attorney, not as the Adams County Prosecutor.  Thus, Mr. James' arguments do not present a § 1983 claim as the actions alleged were not taken under the color of state law.  Though Mr. James concludes in his brief that Mr. Gabbert's position as the county prosecutor gave him greater influence over county officials he offers no evidence supporting this conclusion.  Moreover, as noted above, there has been no violation of his constitutional rights.

      b)     State Law Claims:

Defendants' motion asserts the state law claims are subject to summary judgment because Mr. James failed to post a bond as required by Idaho Code § 6-610, the Idaho Constitution does not provide for private causes of action for monetary damages resulting from civil liberty violations, and the Defendants are entitled to immunity under Idaho Code §§ 6-904(3) and 39-6314.  As stated previously, Mr. James has not responded to these arguments.  As such the Court has reviewed the claims and construed the factual inferences in favor of Mr. James, however, there appears to be no disputed fact existing so as to

preclude summary judgment.  Therefore, the motion for summary judgment is granted as to the state law claims.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court hereby **ORDERS** as follows:

1) Defendant's Motion to Dismiss/Motion for Summary Judgment/Motion for Attorney Fees (Dkt. No. 47) is **GRANTED IN PART**.  The motion is granted as to the claims in the amended complaint (Dkt. No. 42) which is dismissed in its entirety as to Defendant James C. Peart.  The request for attorney fees is under advisement.  Counsel for Judge Peart shall submit its billing records and request for attorney fees no later than April 17, 2006.  Mr. James may file a response of no more than five pages on or before April 27, 2006.  The request will then be ripe and the Court will consider it at that time and issue a decision in due course.

2) Defendant's Motion for Summary Judgment (Dkt. No. 63) is **GRANTED**.  The complaint is dismissed in its entirety as to Defendants Adams County, Richard Green, Jeff Brown, Patricia Wolfe, and Myron D. Gabbert, Jr..

3) Defendant's Motion to Strike (Dkt. No. 58) is **DEEMED MOOT**.

4) This order resolves the entirety of the claims brought by Plaintiff's complaint.

DATED:  **March 3, 2006**

Honorable Edward J. Lodge
U. S. District Judge